**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Randy Ray SMITH, Defendant–
Appellant.**

No. 00–5534.

United States Court of Appeals,
Sixth Circuit.

Aug. 29, 2001.

Before NORRIS and COLE, Circuit Judges; HOLSCHUH,* District judge.

## OPINION

HOLSCHUH, District Judge.

Defendant Randy Ray Smith appeals his jury convictions for the offenses of conspiracy to possess methamphetamine, amphetamine and cocaine with intent to distribute, in violation of 21 U.S.C. § 846; possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; possession of amphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; possession of cocaine, in violation of 18 U.S.C. § 844, and possession of a firearm during and in relation to the commission of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) and § 2. He asserts three assignments of error. For the reasons set forth herein, we **RE-VERSE** in part and **AFFIRM** in part.

## I. BACKGROUND

On May 13, 1999, Steven Eugene Smith and Randy Ray Smith were traveling eastbound on Interstate 40 through Dickson County, Tennessee, in a white Chevrolet Malibu rental car. Steven Smith was driving the vehicle and Randy Smith was in the front passenger seat. Officer Chris Fulcher of the 23rd Judicial Drug Task Force was parked on Interstate 40 observing eastbound traffic. In his patrol car, Officer Fulcher had a trained drug detection dog named Lacy.

Around 4:30 a.m., Officer Fulcher observed the Smiths' vehicle traveling at a rate which he perceived to be higher than the posted 70 miles per hour speed limit. Officer Fulcher began following the vehicle, but did not use his radar to ascertain its speed. After observing the vehicle cross onto the shoulder of the road twice within approximately 200 yards, Officer Fulcher stopped the vehicle for failure to maintain lane control.

After stopping the vehicle, Officer Fulcher approached the driver's side of the vehicle. He testified that he suspected that the occupants were driving a rental vehicle. At the suppression hearing, he could not recall if there were markings on the vehicle which indicated that it was a

---

* The Honorable John D. Holschuh, United States District Judge for the Southern District of Ohio sitting by designation.

rental, but he stated that rental vehicles are usually white, four-door and untinted, such as this vehicle. When Officer Fulcher arrived at the driver's window, Steven Smith already had the rental agreement out for Officer Fulcher's review. Officer Fulcher asked to see Steven's driver's license.

Officer Fulcher noticed the passenger, Randy Smith, raising the passenger seat from the reclined position to the upright position. According to Officer Fulcher, Randy appeared to be "stoned" and had a white mucus substance around his lips. Officer Fulcher asked Randy if he had been asleep, and he answered that he had just awakened. Officer Fulcher testified that Randy responded with a "real thick tongue" and appeared "stoned" and lethargic. Officer Fulcher noticed several food wrappers and a number soft drink cans strewn about the vehicle and a cooler on the back seat. He also detected a smell of body odor as if the men had not bathed in a couple of days.

While looking over the rental agreement, Officer Fulcher noted that the vehicle was rented from an Alamo Rental Agency in Knoxville, Tennessee, in the name of Tracy Smith, and that neither Steven nor Randy was listed as an authorized driver of the vehicle. Steven informed Officer Fulcher that Tracy Smith was his wife. The address listed by Tracy Smith on the rental agreement matched the address on Steven's driver's license. Officer Fulcher testified that he was satisfied that Tracy was in fact Steven's wife.

Officer Fulcher noticed that the vehicle had been rented four days earlier on May 9, 1999, and asked the men if they were on vacation. Steven explained that he was a transport driver for a car hauler and that they had been to Arkansas to look at car haulers. Officer Fulcher informed Steven that he was going to issue him a warning citation for failure to maintain lane control. Officer Fulcher then returned to his patrol car to write out the citation. At the preliminary hearing, Officer Fulcher testified that he could not recall if he performed a driver's license check on Steven.

Upon returning to the rental vehicle, Officer Fulcher presented the warning citation to Steven. Officer Fulcher advised him that the next time he rented a vehicle he intended to drive, he should be listed on the rental agreement as an authorized driver. Officer Fulcher then asked Steven if they had any weapons or narcotics in the vehicle. Steven responded in the negative. Officer Fulcher testified that during this questioning, Steven appeared nervous and would not look at him when responding.

Officer Fulcher asked for consent to search the vehicle, but Steven refused Officer Fulcher then asked Steven and Randy to exit the vehicle so that he could run Lacy, his drug detection dog, around the vehicle. Steven and Randy exited separately from the vehicle and Officer Fulcher patted them down to determine if they were carrying any weapons. According to Officer Fulcher, Steven and Randy were detained at this time and were not free to leave.

After the Smiths exited the vehicle, they waited in front of Officer Fulcher's patrol car as he ran Lacy around the vehicle. The dog alerted to both the passenger's side door and the driver's side door. Officer Fulcher then allowed Lacy to enter the vehicle through the front passenger side of the vehicle. Lacy alerted on a black canvas bag located on the floor behind the driver's seat.[1] Officer Fulcher opened the

---

1. In the district court's order denying Randy Smith's motion to suppress, the court stated

that the bag was located directly behind the front passenger seat. However, as Smith

bag and discovered illegal drugs wrapped in foil and duct tape. The bag contained what was later determined to be 5854.4 grams of methamphetamine, 436.9 grams of amphetamine and 27.1 grams of cocaine. Officer Fulcher placed Steven and Randy under arrest.

Upon further search of the vehicle, Officer Fulcher discovered a loaded Glock 9mm pistol located next to the passenger seat between the seat and the console. A loaded magazine was found in the glove compartment. Additionally, Officer Fulcher and another officer who had arrived on the scene found gas, hotel and food receipts from San Bernardino, California, dated from May 11, 1999 to May 12, 1999. In the trunk, the officers discovered a set of digital scales, wrapping material used to wrap the drugs and a magic marker. In Randy's front pants pocket, Officer Fulcher found a "shooter pipe" used to ingest narcotics. Subsequent to this arrest, law enforcement officers searched Steven's home and recovered over $21,000 in cash.[2]

On October 6, 1999, Steven Smith and Randy Smith were indicted by the federal grand jury for the Middle District of Tennessee. Count I of the indictment charged the defendants with conspiracy to possess with intent to distribute over 5000 grams of methamphetamine, over 400 grams of amphetamine, and a quantity of cocaine, in violation of 21 U.S.C. § 846. Count II of the indictment charged the defendants with knowingly and intentionally possessing with intent to distribute 5000 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Count III of the indictment charged the

defendants with knowingly and intentionally possessing with intent to distribute over 400 grams of amphetamine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Count IV of the indictment charged the defendants with knowingly and intentionally possessing with intent to distribute a quantity of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Count V charged the defendants with unlawfully carrying on or about their persons a firearm during and in relation to the commission of drug trafficking crimes, in violation of 18 U.S.C. § 924(c) and § 2.

Both Steven and Randy filed motions to suppress the evidence obtained during the search of the vehicle. The district court granted Steven's motion, but denied Randy Smith's motion, finding he did not have standing to challenge the legality of the search, because he was a passenger in a rental vehicle and was not listed as an authorized driver of the vehicle, and because he did not assert a possessory interest in any of the contraband seized. The government filed a motion to sever the defendants' cases, and the case against Randy Smith proceeded to trial.

At trial, the government presented three witnesses, Officer Fulcher, Cassandra Franklin, a forensic chemist, and Coleman Ramsey, an agent with the Drug Enforcement Agency ("DEA"). Fulcher testified about the facts surrounding the stop and arrest. Franklin testified as to the chemical composition and weight of the drugs seized, and Ramsey testified as to their value and use. At the close of the proof, Randy Smith renewed his motion for a

---

points out, Officer Fulcher testified at the suppression hearing and at trial that the bag was found behind the *driver's* seat. No other evidence was presented to contradict this testimony.

2. During the traffic stop, Randy gave the same address as Steven. However, the officers who conducted the search did not find any items belonging to Randy, nor any indication that he resided there. Officer Fulcher testified that the officers believed that Randy did not reside at that address.

judgment of acquittal, which the court denied.

On January 13, 2000, the jury returned guilty verdicts on Counts I, II, III and V as charged. As to Count IV, the jury returned a guilty verdict on the lesser included offense of possession of cocaine. On April 20, 2000, the district court sentenced Randy Smith to 292 months imprisonment as to Counts I and II; and imposed concurrent sentences of 240 months as to Count III and 12 months as to Count IV. The court imposed a consecutive sentence of 60 months as to Count V.

On appeal, Smith raises three assignments or error. First, Smith asserts that the district court erred in denying his motion to suppress on the ground that he lacked standing to challenge the search of the rental car. Second, Smith argues that the district court erred in denying his motion for judgment of acquittal. Finally, in a supplemental *pro se* brief, Smith submits that the sentence imposed violates the principles of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

## II. DISCUSSION

### A. STANDING

In his first assignment of error, Smith argues that the district court erred in denying his motion to suppress, based on its ruling that Smith did not have standing to challenge the search of the automobile.

Smith's argument is based on nothing more than his belief that this case presents an inequitable situation, in that the evidence was suppressed with respect to the driver of the vehicle, but was admissible against him. However, Smith acknowledges in his brief that the district court's decision was based upon an "accurate review of the current state of the law in the Sixth Circuit as to the standing of a passenger to raise a Fourth Amendment challenge." *See United States v. Carter*, 14 F.3d 1150 (6th Cir.1994); *United States v. Pino*, 855 F.2d 357 (6th Cir.1988), *amended by*, 866 F.2d 147 (6th Cir.1989). Additionally, Smith conceded during oral argument that we cannot overturn the case law upon which the district court's decision was based. *See e.g., United States v.. Layne*, 192 F.3d 556, 575 (6th Cir.1999), *cert. denied*, 529 U.S. 1029, 120 S.Ct. 1443, 146 L.Ed.2d 330 (2000) ("One 'panel of this Court cannot overrule the decision of another panel' and 'the prior decision remains controlling authority' unless this Court overrules that prior decision en banc or a rule by the Supreme Court mandates its modification") (*quoting Timmer v. Dep't of Commerce*, 104 F.3d 833, 839 (6th Cir.1997)).

Thus because we find that the district court correctly concluded that Smith did not have standing to challenge the search of the automobile, we **AFFIRM** the district court's denial of Smith's motion to suppress.[3]

---

**3.** Smith also argues that under the doctrine of judicial estoppel, the government should be estopped from asserting, for the purposes of suppression, that he did not possess the items, and then subsequently arguing, for purposes of the substantive charges, that he did possess the items. Smith maintains that the government must be forced to adhere to a singular theory of possession. We disagree. In *United States v. Salvucci*, 448 U.S. 83, 88–89, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), the Su-

preme Court stated, "a prosecutor may, with legal consistency and legitimacy, assert that a defendant charged with possession of a seized item did not have a privacy interest violated in the course of the search and seizure." Further, in *Salvucci*, the Court held that "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objec-

## B. SUFFICIENCY OF THE EVIDENCE

The district court's denial of a motion to acquit is a legal question this Court reviews *de novo*. *See United States v. Keeton*, 101 F.3d 48, 52 (6th Cir.1996) (citing *United States v. Gibson*, 896 F.2d 206, 209 (6th Cir.1990)). We must consider all of the evidence in the light most favorable to the prosecution, and determine "whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original). Although we conduct a *de novo* review, "our review of the sufficiency of the evidence is quite limited." *United States v. Morrow*, 977 F.2d 222, 230 (6th Cir.1992) (en banc). "We do not weigh the evidence, consider the credibility of witnesses or substitute our judgment for that of the jury." *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir.1993). As this Court held in *United States v. Stone*, 748 F.2d 361, 363 (6th Cir.1984), we "will reverse a judgment for insufficiency of the evidence only if this judgment is not supported by substantial and competent evidence upon the record as a whole ... whether the evidence is direct or wholly circumstantial." We have recognized that "circumstantial evidence alone can sustain a guilty verdict ... and need *not* remove every reasonable hypothesis except that of guilt." *Id.* at 362 (emphasis in original). If however, the evidence is such that a "rational fact finder must conclude that a reasonable doubt is raised, this [C]ourt is obligated to reverse a denial of an acquittal motion." *United States v. Lloyd*, 10 F.3d 1197, 1210 (6th

Cir.1993) (citing *United States v. Collon*, 426 F.2d 939, 942 (6th Cir.1970)).

## Count I: Conspiracy to possess with intent to distribute (21 U.S .C. § 846)

To sustain a conviction for conspiracy under § 846, the government must prove beyond a reasonable doubt: (1) an agreement to violate drug laws; (2) knowledge of and intent to join the conspiracy; and (3) participation in the conspiracy. *See Layne*, 192 F.3d at 567 (citing *United States v. Welch*, 97 F.3d 142, 148–49 (6th Cir.1996)). These elements may be proved by either direct or circumstantial evidence. *See United States v. Avery*, 128 F.3d 966, 971 (6th Cir.1997). The government need not prove the existence of a formal or express agreement among the conspirators, because even a tacit or mutual understanding among the parties is sufficient. *See United States v. Hughes*, 891 F.2d 597, 601 (6th Cir.1989). "The existence of a conspiracy may be inferred from circumstantial evidence that can reasonably be interpreted as participation in the common plan." *Avery*, 128 F.3d at 971. The government need not prove that the defendant committed an overt act in furtherance of the conspiracy. *See Layne*, 192 F.3d at 567. The intent to distribute a controlled substance may be inferred from possession of a large quantity of the substance. *See United States v. White*, 932 F.2d 588, 590 (6th Cir.1991) (per curiam); *see also United States v. Vincent*, 20 F.3d 229, 233 (6th Cir.1994) (intent to distribute may be inferred from quantity, value and purity of the drugs, as well as other evidence which would support the inference that the drugs were not intended for personal use).

tion." *Id.* at 89–90. *See also Pino*, 855 F.2d at 360 (noting that at the suppression hearing, the defendant, a passenger in a rental car, had an opportunity to assert that he had a

property or possessory interest in the evidence sought to be suppressed, without having such testimony used against him during trial).

Finally, "the connection of the defendant to the conspiracy need only be slight if there is sufficient evidence to establish the connection beyond a reasonable doubt." *United States v. Ward,* 190 F.3d 483, 488 (6th Cir.1999), *cert. denied,* 528 U.S. 1118, 120 S.Ct. 940, 145 L.Ed.2d 817, (2000) and *cert. denied,* 529 U.S. 1028, 120 S.Ct. 1440, 146 L.Ed.2d 328 (2000) (citing *United States v. Hernandez,* 31 F.3d 354, 358 (6th Cir.1994)). However, "mere association with conspirators is not enough to establish participation in a conspiracy." *United States v. Pearce,* 912 F.2d 159, 162 (6th Cir.1990) (quoting *United States v. Stanley,* 765 F.2d 1224, 1243 (5th Cir.1985)).

The government failed to present any direct evidence that Randy Smith was involved in a conspiracy to possess and distribute drugs. Therefore, our analysis must focus on the circumstantial evidence presented at trial.

The government presented evidence that Randy was a passenger in a rental vehicle rented and driven by Steven Smith, and that the car contained drugs, scales, and packaging materials. The government presented evidence that during the period of May 9, 1999 to May 13, 1999, the car traveled 4000 miles.

However, the government failed to present any evidence that would support a finding that Randy had some type of relationship with the driver, Steven Smith, and that he had entered into an agreement with Steven to possess and distribute the large quantities of methamphetamine and amphetamine found behind Steven's seat in the car, or even that he had traveled in Steven's car during the entire period Steven had possession of the car. Although the government presented circumstantial evidence which suggests that Randy may have been under the influence of a drug, this establishes nothing more than use of a drug, and perhaps even knowledge that

the drug he was using was located in the car. That evidence does not, however, establish that Randy was involved in a conspiracy to possess and distribute the large quantities of methamphetamine and amphetamine and the small amount of cocaine found in Steven's car.

Mere association with those possessing or dealing drugs is insufficient to prove a conspiracy. *See United States v. Gibbs,* 182 F.3d 408, 422 (6th Cir.), *cert. denied,* 528 U.S. 1051, 120 S.Ct. 592, 145 L.Ed.2d 492 (1999); *Pearce,* 912 F.2d at 162. In fact, as this Court has previously recognized, "merely riding in a car, even with knowledge of the presence of illegal drugs, is not enough to establish a conspiracy." *Carter,* 14 F.3d at 1155 (citing *United States v. Sanchez–Mata,* 925 F.2d 1166, 1168 (9th Cir.1991)). We find that even when viewing the evidence in the light most favorable to the government, the government has failed to prove Randy Smith's participation in a conspiracy to violate drug laws. The government has established nothing more than mere association, that Randy Smith was riding in a vehicle which contained drugs. Therefore, the evidence is insufficient for a rational trier of fact to conclude beyond a reasonable doubt that Smith knew of, intended to join, and participated in a conspiracy to possess and distribute methamphetamine, amphetamine and cocaine.

We therefore **REVERSE** Randy Smith's conviction under 21 U.S.C. § 846.

### Counts II and III: Possession with intent to distribute (21 U.S.C. § 841 and 18 U.S.C. § 2)

Defendant was convicted on Counts II and III of possession with intent to distribute, over 5000 grams of methamphetamine and over 400 grams of amphetamine, respectively.

■ To sustain a conviction under § 841(a)(1) for possession with intent to distribute, the government must prove (1) the defendant knowingly; (2) possessed a controlled substance; (3) with the intent to distribute. *See United States v. Jackson,* 55 F.3d 1219, 1225 (6th Cir.1995).

■ To sustain a conviction for aiding and abetting the possession of a controlled substance intended for distribution under 18 U.S.C. § 2, the government must establish that the defendant participated in the venture as something he wished to bring about and sought to make succeed. *See Ward,* 190 F.3d at 487. Knowledge that a crime is being committed, even when coupled with presence at the scene, is generally not sufficient to support a conviction on the basis of aiding and abetting. *See United States v. Bryant,* 461 F.2d 912, 920 (6th Cir.1972). *See also United States v. Pena,* 983 F.2d 71, 72 (6th Cir.1993) (In order to sustain passenger's conviction for aiding and abetting the driver in his possession of cocaine for distribution, the government must offer proof that the passenger knew that the driver possessed the cocaine with the intent to distribute it, and that the passenger assisted the driver in his plan). *See id.* at 72–73 ("A generalized belief or suspicion that something illegal is going on is not sufficient for a rational jury to find that a mere passenger in an automobile is aiding and abetting the delivery of cocaine"); *see also United States v. Sanchez–Mata,* 925 F.2d 1166, 1169 (9th Cir.1991) (presence as a passenger in a vehicle cannot support a conviction for aiding and abetting the possession of narcotics with intent to distribute).

■ The government is not required to prove actual possession of a controlled substance, because constructive possession is sufficient to establish a violation of § 841(a)(1). See *Gibbs,* 182 F.3d at 424.

"Like actual possession, constructive possession may be proved by circumstantial evidence." *United States v. Reed,* 141 F.3d 644, 651 (6th Cir.1998) (citing *United States v. Murphy,* 107 F.3d 1199, 1208 (6th Cir.1997)). Constructive possession exists when an individual knowingly has the power and intention at a given time to exercise dominion and control over an object which is not in his or her actual possession, or over the premises or vehicle in which the object is located. *See Reed,* 141 F.3d at 650; *White,* 932 F.2d at 589; *United States v. Ferg,* 504 F.2d 914, 916–17 (5th Cir.1974). However, "dominion and control are not established by mere proximity to the drug, or mere presence on the property where it is located or mere association with the person who does control the drug or the property." *United States v. Jenkins,* 90 F.3d 814, 818 (3rd Cir.1996) (internal quotation and citation omitted); *accord White,* 932 F.2d at 589 (citing *United States v. Gordon,* 700 F.2d 215, 217 (5th Cir.1983)). *See also United States v. Johnson,* No. 00–5097, 2001 WL 493395 at *1 (6th Cir. May 1, 2001) (citing *Jackson,* 55 F.3d at 1225) ("The mere presence of the defendant in proximity to the controlled substance, by itself, is insufficient to establish possession with an intent to distribute beyond a reasonable doubt").

The intent to distribute a controlled substance may be inferred from the possession of a large quantity of the substance. *See White,* 932 F.2d at 590; *see also Vincent,* 20 F.3d at 233 (intent to distribute may be inferred from quality, value and purity of the drugs, as well as other evidence which would support the inference that the drugs were not intended for personal use).

The government presented no direct evidence of actual possession by Smith. In fact, there is there no direct evidence that he knew of the drugs or exercised control

over the drugs or the vehicle, or that he was anything but a passenger in the vehicle. Thus, the issue before us is whether the government presented sufficient circumstantial evidence to establish that Smith constructively possessed the methamphetamine and the amphetamine with the intent to distribute the drugs. *See Jenkins,* 90 F.3d at 817.

■■■ With respect to these counts, the evidence presented at trial established that 5854.4 grams of amphetamine and 436.9 grams of methamphetamine were discovered in a bag located on the floor behind the driver's seat. DEA Agent Ramsey testified that these quantities were consistent with drug distribution. Thus, the jury was entitled to infer an intent to distribute from these quantities. While the evidence may have been sufficient to establish constructive possession, if not actual possession, of these drugs by the possessor and driver of the vehicle, the problem with the convictions of Smith, a passenger, is the lack of evidence showing any possession of these drugs by him. The government presented no evidence that Smith exercised any control over or had access to these drugs. The drugs were found in a bag, covered by a shirt, on the floor behind the driver's seat. Additionally, the government presented no evidence that Smith exercised any type of control over the vehicle or the bag in which the drugs were located. The government's only evidence was that Smith was a passenger in a vehicle which contained drugs likely intended for distribution. *See Ferg,* 504 F.2d at 916 (reversing conviction of passenger in a vehicle containing marijuana for possession with intent to distribute, where there was no evidence that passenger possessed the contraband, intended to participate in the distribution of it, rented the vehicle or shared in the cost, drove the vehicle, or

even that he traveled with the driver for a sustained period of time).

■■■ The government also failed to present any evidence to support Smith's conviction on an aiding and abetting theory. Even if Smith was aware of the drugs or the driver's involvement in illegal activity, that awareness would be insufficient to convict him of aiding and abetting possession of drugs with intent to distribute. *See Pena,* 983 F.2d at 72–73; *Sanchez–Mata,* 925 F.2d at 1169; *see also United States v. Moreno–Hinojosa,* 804 F.2d 845, 847 (5th Cir.1986) ("Even if [the passenger] knew that [the driver] was making an illegal marihuana run, this fact would not be sufficient evidence to establish his possession without an additional showing that he was riding in the truck to participate in the possession and distribution. The government did not make this additional showing even circumstantially beyond a reasonable doubt").

Even when viewing the circumstantial evidence in the light most favorable to the government as we must do, we find that the evidence presented at trial was insufficient for a rational trier of fact to find beyond a reasonable doubt that Smith knowingly possessed a controlled substance with the intent to distribute it, or that he aided and abetted the driver in doing so.

Therefore, we **REVERSE** Smith's convictions for possession of methamphetamine and amphetamine with intent to distribute.

### Count IV: Possession of cocaine

In Count IV of the indictment, Randy Smith was charged with knowingly and intentionally possessing with intent to distribute a quantity of cocaine. The jury convicted him of the lesser included offense of simple possession of cocaine. To sustain the conviction for simple posses-

sion, the government was required to prove beyond a reasonable doubt that Smith: (1) knowingly or intentionally; (2) possessed; (3) a quantity of cocaine. *See United States v. Monger*, 185 F.3d 574, 577 n. 2 (6th Cir.1999). Possession may be proved by direct as well as circumstantial evidence.

With respect to Smith's possession of cocaine, the government presented no direct evidence. However, the government did present circumstantial evidence. Just over twenty-seven grams of cocaine were found in the car in which Smith was a passenger. The government's expert witness, DEA Agent Ramsey, testified that the price for that quantity of cocaine would range from $800 to $1200. Ramsey also testified that the quantity of cocaine recovered was consistent with both distribution and personal use. A "shooter pipe," which is used for smoking, inhaling or otherwise ingesting narcotics was found in Smith's pants pocket. However, no residue was found in the pipe.[4] Officer Fulcher testified that at the time of the arrest, Smith "appeared stoned," spoke with a "thick tongue," and had a white mucus around his mouth.

■ It is apparent that by returning a verdict based only on simple possession of cocaine, the jury arrived at its verdict by consideration of the relatively small amount of cocaine in the car, the pipe found on Smith, and his appearance being that of a person who has recently smoked cocaine. Viewed in the light most favorable to the government, we find this evidence sufficient to sustain Smith's conviction for simple possession of cocaine. Agent Ramsey testified that the quantity of cocaine could be consistent with personal use. At the time of the traffic stop, Smith appeared to be stoned and had a

white mucus around his mouth. Additionally, a shooter pipe was found in his pants pocket. This circumstantial evidence is sufficient to support the jury's verdict on Count IV.

Therefore, we **AFFIRM** Randy Smith's conviction for simple possession of cocaine.

### Count V: Carrying firearm during a drug trafficking crime (18 U.S.C. §§ 924 and 2)

Count V of the indictment charged Randy Smith with unlawfully carrying on or about his person a firearm during and in relation to the commission of drug trafficking crimes. The jury returned a guilty verdict on Count V.

■ To sustain a verdict under § 924(c)(1), the government must prove beyond a reasonable doubt that the defendant committed the underlying predicate offense. *See United States v. Nelson*, 27 F.3d 199, 201 (6th Cir.1994); *Jenkins*, 90 F.3d at 821. However, it is not necessary for the government to obtain a conviction on the underlying offense, because the "fact of the offense" is all that is necessary. *See United States v. Ospina*, 18 F.3d 1332, 1336 (6th Cir.1994). Thus, as this Court has previously noted, "a defendant does not have to actually be convicted of a drug trafficking offense in order for him to be prosecuted for carrying a firearm in relation to a drug trafficking crime." *United States v. Murphy*, No. 94–5762, 1995 WL 118930 at *1 (6th Cir. Mar. 20, 1995). All that is required is that the government prove the commission of a drug trafficking offense beyond a reasonable doubt. To prove that a defendant aided and abetted the carrying of a firearm during the commission of a drug trafficking offense, the government must establish that the defendant participated in

---

4. Officer Fulcher testified at the suppression hearing that he did not detect any residue on the pipe, and that the pipe was not tested for residue.

the venture as something he wished to bring about and sought to make succeed. *See Ward,* 190 F.3d at 487.

Section 924(c)(2) defines "drug trafficking crime" as "any *felony* punishable under the Controlled Substances Act (21 U.S.C. 801 *et. seq.*), the Controlled Substances Import and Export Act (21 U.S.C. 951 *et. seq.*), or the Maritime Drug Law Enforcement Act (46 U.S.C.App.1901 *et. seq.*)." 18 U.S.C. § 924(c)(2) (emphasis added). Although possession of methamphetamine or amphetamine with the intent to distribute is a "drug trafficking crime" within the meaning of § 924(c), *see United States v. Nabors,* 901 F.2d 1351, 1356 (6th Cir.1990), we have determined that the government failed to prove Smith's guilt beyond a reasonable doubt on those charges. Thus, Smith's convictions for possession with the intent to distribute, which must be set aside, cannot serve as the predicate offenses for his § 924(c) conviction. We must next consider whether Smith's conviction for simple possession of cocaine qualifies as a "drug trafficking crime" within the meaning of § 924(c).

 Smith was convicted of possessing a "quantity" of cocaine, and was sentenced to a one-year term of imprisonment. Under the facts of this case, Smith's conviction for simple possession of cocaine is an offense punishable by a term of imprisonment of not more than one year. *See* 21 U.S.C. § 844(a). Thus, his conviction for cocaine possession is a misdemeanor offense, and as such, cannot serve as the underlying predicate offense for the § 924(c) charge. The government failed to present sufficient evidence to prove beyond a reasonable doubt that Smith engaged in any "drug trafficking crime" as defined by § 924(c)(2). Additionally, even if the government had proven beyond a reasonable doubt Smith's involvement in a "drug trafficking crime," we find that the evidence presented for the § 924(c) charge

is insufficient to sustain Smith's conviction. There is no indication that Smith used, possessed, or knew of the gun's presence in the vehicle, or that he aided and abetted Steven Smith in carrying the gun. His proximity to the gun is not sufficient to sustain the conviction.

Even when viewing the evidence in the light most favorable to the government, the evidence is insufficient for a rational trier of fact to conclude beyond a reasonable doubt that Smith carried a firearm during and in relation to a drug trafficking crime. Therefore, we **REVERSE** Smith's conviction for carrying a firearm during the commission of a drug trafficking crime.

### C. *APPRENDI*

In a supplemental *pro se* brief, Smith argues that the district court erred in the imposition of his sentences on Counts I and II, and violated the principles set forth in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). As a result of our decision reversing Smith's convictions on those counts, we need not address this issue.

### III. CONCLUSION

For the foregoing reasons, we **REVERSE** Randy Smith's convictions on Counts I, II, III and V, and **AFFIRM** his conviction on Count IV. This case is **REMANDED** to the district court with the instruction to enter an amended judgment consistent with this opinion.

NORRIS, Circuit Judge, dissenting.

As the majority acknowledges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Furthermore, "[t]he government may meet its bur-

den through circumstantial evidence alone, and such evidence need not exclude every possible hypothesis except that of guilt." *United States v. Salgado,* 250 F.3d 438, 446 (6th Cir.2001) (citing *United States v. Jackson,* 55 F.3d 1219, 1225 (6th Cir. 1995)). Consequently, "a defendant claiming insufficiency of the evidence bears a heavy burden." *United States v. Maliszewski,* 161 F.3d 992, 1005 (6th Cir.1998). In my view, defendant has not met this burden; sufficient circumstantial evidence exists to support the jury's verdict.

With respect to the proof necessary to sustain the conspiracy conviction, "the connection between the defendant and the conspiracy need only be slight, and the government is only required to prove that the defendant was a party to the general conspiratorial agreement." *Salgado,* 250 F.3d at 447 (citing *Maliszewski,* 161 F.3d at 1006). In addition, "[t]he existence of a conspiracy may be inferred from circumstantial evidence that can reasonably be interpreted as participation in the common plan." *Id.* (citing *United States v. Avery,* 128 F.3d 966, 971 (6th Cir.1997)). Lastly, "[a]n intent to distribute the [controlled substances] may be inferred from the large quantity and purity of the [substances]." *Id.* (citing *United States v. White,* 932 F.2d 588, 590 (6th Cir.1991)).

In this case, the jury had the following evidence before it: 1) Randy Smith was a passenger in a rental car that had traveled approximately 4,000 miles during the four days preceding the stop; 2) the car was pulled over on an interstate highway at 4:30 in the morning; 3) a large quantity of narcotics was seized; 4) a Glock pistol was found next to the passenger's seat and a loaded magazine was discovered in the glove compartment; 5) Randy Smith had white mucous around his lips when the car was pulled over and his speech was slurred; 6) he had a shooter pipe in his pocket.

The majority cites *United States v. Carter,* 14 F.3d 1150 (6th Cir.1994), for the proposition that "merely riding in a car, even with knowledge of the presence of illegal drugs, is not enough to establish a conspiracy." *Id.* at 1155. However, in the same paragraph, this court affirmed the conviction of defendant based in part upon the following circumstance: "The two men had been riding together for a considerable time, and it would be fair to conclude that [defendant's] presence provided aid and comfort to [the driver] during a long and demanding drug run." *Id.* at 1156. In this case, it is fair to conclude that a jury could rightly infer that Randy Smith was providing similar assistance. His presence in a rented car at 4:30 a.m. speeding along an interstate while carrying a substantial amount of drugs supports such an inference, as does the fact that the car had been driven 4,000 miles in just four days. Given these circumstances, it is difficult to grasp how the majority could conclude that "the government failed to present any evidence that would support a finding that Randy had some type of relationship with the driver." Although the court properly cites the rational juror standard, it reaches conclusions more appropriate to a jury member than to an appellate court charged with "viewing the evidence in the light most favorable to the prosecution." *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781. In short, the evidence presented to the jury is constitutionally sufficient to sustain Randy Smith's conspiracy conviction.

As far as the possession with intent to distribute counts are concerned, the majority concludes that Randy Smith neither possessed the drugs nor aided and abetted their distribution. "To prove that a defendant aided and abetted the possession with intent to distribute a controlled substance, the government must establish that the defendant participated in the venture as

something he wished to bring about and sought to make succeed." *Salgado,* 250 F.3d at 447 (citing *United States v. Ward,* 190 F.3d 483, 487 (6th Cir.1999)). As with the conspiracy count, I conclude that a rational juror could infer from the evidence that Randy Smith was aiding in a long-haul drug run and, consequently, was a participant who sought to make this illicit venture succeed.

Finally, the logic of my conclusions with respect to the conspiracy and possession with intent to distribute counts extends to his conviction for carrying a firearm in relation to a drug trafficking crime. 18 U.S.C. § 924(c)(1). Randy Smith sat with the firearm within easy reach while committing felony drug trafficking crimes. In my view, this is more than enough to sustain the conviction.

I respectfully dissent.