ACCEPTED
03-14-00473-CR
3737665
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/12/2015 4:00:40 PM
JEFFREY D. KYLE
CLERK

**No. 03-14-00473-CR**
**IN THE**
**COURT OF APPEALS**
**OF THE THIRD SUPREME JUDICIAL DISTRICT**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
1/12/2015 4:00:40 PM
JEFFREY D. KYLE
Clerk

_____

SHAWN MICHAEL WALKER,
Appellant,

v.

STATE OF TEXAS

_____

Appeal in Cause No. 72029
in the 264th District Court of
Bell County, Texas

_____

**BRIEF FOR APPELLANT SHAWN MICHAEL WALKER**

_____


JOHN A. KUCHERA
210 N. 6th St.
Waco, Texas 76701
(254) 754-3075
(254) 756-2193 (facsimile)
SBN 00792137
johnkuchera@210law.com
Attorney for Appellant

## Identity of Judge, Parties, and Counsel

Honorable Martha J. Trudo, 264th District Court, P.O. Box 324, Belton, Texas 76513; Trial Judge

Michael Waldman, Assistant District Attorney, Bell County, Texas, P.O. Box 540, Belton, Texas 76513; State's Trial Counsel

Terry E. Clark, Assistant District Attorney, Bell County, Texas, P.O. Box 540, Belton, Texas 76513; State's Trial Counsel

Jeffrey D. Parker, P.O. Box 660, Belton, Texas 76513-0660, Appellant's Trial Counsel

Bob D. Odom, Assistant District Attorney, P.O. Box 540, Belton, Texas 76513, State's Appellate Counsel

John A. Kuchera, 210 N. 6th St., Waco, Texas, 76701, Appellant's Appellate Counsel

Shawn Michael Walker, Appellant, TDC #1944889, Estelle Unit, 264 FM 3478, Huntsville, TX 77320-3320

# Table of Contents

|                                                                 | Page   |
| --------------------------------------------------------------- | ------ |
| Identity of Parties and Counsel                                 | ii     |
| Table of Contents                                               | iii-iv |
| Index of Authorities                                            | v-ix   |
| Issues Presented                                                | x      |
| Statement of the Case                                           | 2      |
| Statement of Facts                                              | 2-3    |
| Summary of the Argument                                         | 3      |

Argument and Authorities

|                                                                                                          |        |
| -------------------------------------------------------------------------------------------------------- | ------ |
| **1.** The evidence was not sufficient to sustain Walker's possession with intent conviction as a principal. | 4-28   |
| *(a) Standard of review*                                                                                 | 4-5    |
| *(b) Indictment*                                                                                         | 5      |
| *(c) Possession generally*                                                                               | 5-6    |
| *(d) Possession is "location specific"*                                                                  | 6-7    |
| *(e) Constructive possession when others are present*                                                    | 7-9    |
| *(f) Constructive possession in a vehicle when others are present*                                       | 9-12   |
| *(g) Intent to distribute*                                                                               | 12-15  |
| *(h) What constitutes a rational, reasonable inference?*                                                 | 15-17  |
| *(j) Analysis*                                                                                           | 17-    |
| *(i) driver's side baggie*                                                                               | 17-18  |
| *(ii) Walker's pocket baggie*                                                                            | 18     |
| *(iii) Pierce's vaginal methamphetamine*                                                                 | 18-19  |
| *(iv) bag behind the driver's seat*                                                                      | 19-20  |
| *(v) Frisbee methamphetamine*                                                                            | 20-21  |
| *(vi) pink methamphetamine*                                                                              | 21-22  |
| *(vii) syringes*                                                                                         | 22     |
| *(viii) MSM*                                                                                             | 22     |
| *(ix) legitimate inferences*                                                                             | 22-28  |

**2.** The evidence was not sufficient to sustain Walker's possession with intent conviction under a party theory.    29-34

*(a) Evidentiary requirements for conviction as a party*    29-30
*(b) Aiding and abetting under federal law*    30-31
*(c) Pierce as a principal*    31
*(d) Walker's conduct before the arrest*    31-32
*(e) Walker's conduct at the time of the arrest*    32-33
*(f) Walker's conduct after the arrest*    33-34
*(g) Summary*    34


Prayer for Relief    34-35

Certificate of Service    36

Certificate of Compliance    37

# Table of Authorities

**Page(s)**

**Cases**

*Adames v. State*,
 353 S.W.3d 854 (Tex. Crim. App. 2011) .........................................................15

*Adams v. State*,
 No. 05-92-02268-CR, 1994 WL 370117 (Tex.App.—Dallas July
 14, 1994, no pet.) (unpublished).........................................................32

*Ahrens v. State*,
 43 S.W.3d 630 (Tex.App.—Houston [1st Dist.] 2001, pet. ref'd) .....................34

*Aldridge v. State*,
 482 S.W.2d 171 (Tex. Crim. App. 1972) .........................................................9

*Allen v. State*,
 249 S.W.3d 680 (Tex.App.—Austin 2013, no pet.).................6, 9, 25, 26, 27, 28

*Bethancourt-Rosales v. State*,
 50 S.W.3d 650 (Tex.App.—Waco 2001, pet. ref'd) ...................................10, 12

*Blackman v. State*,
 350 S.W.3d 588 (Tex. Crim. App. 2011) .........................................................12

*Brewer v. State,* 126 S.W.3d 295, 297 Tex.App.—Beaumont 2004,
 pet. ref'd)........................................................................................................15

*Brooks v. State*,
 323 S.W.3d 893 (Tex. Crim. App. 2010) .........................................................4

*Brown v. State*,
 911 S.W.2d 744 (Tex. Crim. App. 1995) .........................................................7

*Burdine v. State*,
 719 S.W.2d 309 (Tex. Crim. App. 1986) .........................................................29

*De La Garza v. State*,
 898 S.W.2d 376 (Tex.App. – San Antonio 1995, no pet.) ................................13

*Evans v. State*,
  202 S.W.3d 158 (Tex. Crim. App. 2006) ........................................................8, 9

*Harvey v. State*,
  487 S.W.2d 75 (Tex. Crim. App. 1972) ...............................................................9

*Hernandez v. State*,
  819 S.W.2d 806 (Tex. Crim. App. 1991) ...........................................................29

*Herrera v. State*,
  No. 07-09-0071-CR, 2009 WL 2618301 (Tex. App.—Amarillo
  Aug. 26, 2009, no pet.) .....................................................................................13

*Hooper v. State*,
  214 S.W.3d 9 (Tex. Crim. App. 2007) ..........................................................16, 17

*Jackson v. Virginia*,
  443 U.S. 307 (1979).........................................................................................4, 15

*Jenkins v. State*,
  76 S.W.3d 709 (Tex.App.—Corpus Christi 2002, pet. ref'd) .............................9

*Lane v. State*,
  151 S.W.3d 188 (Tex. Crim. App. 2004) ............................................................4

*Marable v. State*,
  85 S.W.3d 287 (Tex. Crim. App. 2002) ............................................................30

*Mares v. State*,
  801 S.W.2d 121 (Tex.App. – San Antonio 1990, no pet.) ...................................9

*Martin v. State*,
  753 S.W.2d 384 (Tex. Crim. App. 1988) ............................................................5

*Moreno v. State*,
  821 S.W.2d 344 (Tex.App.-Waco 1991, pet. ref'd)........................................6, 7

*Oaks v. State*,
  642 S.W.2d 174 (Tex. Crim. App. 1982) (en banc) ...........................................9

*Owen v. State*,
  No. 05-91-00127-CR, 1992 WL 166598 (Tex. App.—Dallas July
  15, 1992, pet. ref'd) (unpublished).....................................................................13

*Paulman v. State*,
No. 2-07-291-CR, 2008 WL 4531707 (Tex.App.—Fort Worth Oct. 9, 2008, pet. dism'd) (unpublished)......................................................................7

*Pesina v. State*,
949 S.W.2d 374 (Tex.App.—San Antonio 1997, no pet.) ...............................29

*Poindexter v. State*,
153 S.W.3d 402 (Tex. Crim. App. 2005) .....................................................5, 8

*Powell v. State*,
502 S.W.2d 705 (Tex. Crim. App. 1973) .........................................................6

*Ransom v. State*,
920 S.W.2d 288 (Tex. Crim. App. 1996) ........................................................30

*Richardson v. State*,
879 S.W.2d 874 (Tex. Crim. App.1992) ........................................................31

*Roberson v. State*,
80 S.W.3d 730 (Tex.App.—Houston [1st Dist.] 2002, pet. ref'd) .....................10

*Santiestan-Pileta v. State*,
421 S.W.3d 9 (Tex.App.—Waco 2013, pet. ref'd) .............................................9

*Taylor v. State*,
684 S.W.2d 682 (Tex. Crim. App. 1984) .......................................................15

*Thornton v. State*,
425 S.W.3d 289 (Tex. Crim. App. 2014) .....................................................4, 34

*United States v. Campos*,
306 F.3d 577 (8th Cir. 2002) .......................................................................13

*United States v. Cooper*,
No. 8:13-cr-187, 2013 WL 5741786 (M.D. Fla. Oct. 22, 2013) (unpublished) ...............................................................................................28

*United States v. Coppin*,
1 Fed. Appx. 283 (6th Cir. 2001) (unpublished) ..............................................28

*United States v. Crain*,
33 F.3d 480 (5th Cir. 1994) .........................................................................23

*United States v. Delagarza-Villarreal,*
141 F.3d 113 (5th Cir. 1997) ...............................................................30

*United States v. Ferg*,
504 F.2d 914 (5th Cir. 1974) ...............................................................10

*United States v. Gordon*,
700 F.2d 215 (5th Cir. 1983) ...............................................................11

*United States v. Hernandez-Beltran*,
867 F.2d 224 (5th Cir. 1989) .................................................................7

*United States v. Jones*,
518 F.2d 64 (9th Cir. 1975) ..................................................................28

*United States v. Littrell*,
574 F.2d 828 (5th Cir. 1978) ...............................................................11

*United States v. Lombardi*,
138 F.3d 559 (5th Cir. 1998) ...............................................................30

*United States v. Longoria*,
569 F.2d 422 (5th Cir. 1978) ...........................................................32, 33

*United States v. Meneses–Davila*,
580 F.2d 888 (5th Cir.1978) ................................................................12

*United States v. Meshack*,
225 F.3d 556 (5th Cir. 2000), *amended on reh'g in part,* 244 F.3d
367 (5th Cir. 2001).............................................................................27

*United States v. Moreno-Hinojosa*,
804 F.2d 845 (5th Cir. 1986) ..........................................................10, 11

*United States v. Morrison*,
220 Fed. Appx. 389 (6th Cir. 2007) (unpublished) ....................................31, 32

*United States v. Natel*,
812 F.2d 937 (5th Cir. 1987) ...............................................................30

*United States v. Ramos*,
476 F.2d 624 (9th Cir. 1973) ...............................................................12

*United States v. Savinoch*,
845 F.2d 834 (9th Cir. 1988) ................................................................32

*United States v. Sliwo*,
620 F.3d 630 (6th Cir. 2010) ................................................................34

*United States v. Smith*,
20 Fed. Appx. 258 (6th Cir. 2001) (unpublished) .................................13, 14, 15

*United States v. Stanley*,
24 F.3d 1314 (11th Cir. 1994) ................................................................12

*United States v. Zule*,
581 F.2d 1218 (5th Cir. 1978) ................................................................11

*Urbano v. State*,
837 S.W.2d 114 (Tex. Crim. App. 1992) ....................................................15, 16

*Wooden v. State*,
101 S.W.3d 542 (Tex.App. – Fort Worth 2003, no pet,)....................................29

## Statutes

Tex. Health & Safety Code Ann. § 481.002 (38) ......................................................5

Tex. Penal Code Ann. § 7.02 (a)(2) ........................................................................29

## Other Authorities

Black's Law Dictionary  (6th ed. 1990) .................................................................15

New Webster's Dictionary of the English Language  (1971)...................................15

## Issues Presented

1.  Whether the evidence was not sufficient to sustain Walker's possession with intent conviction as a principal.

2.  Whether the evidence was not sufficient to sustain Walker's possession with intent conviction under a party theory.

**IN THE**

**COURT OF APPEALS**

**OF THE THIRD SUPREME JUDICIAL DISTRICT**

_____


SHAWN MICHAEL WALKER,
   Appellant,


   v.                                              **No. 03-14-00473-CR**


STATE OF TEXAS


_____

Appeal in Cause No. 72029
in the 264th District Court of
Bell County, Texas

_____

**BRIEF OF APPELLANT SHAWN MICHAEL WALKER**
_____

TO THE HONORABLE JUSTICES OF THE THIRD COURT OF APPEALS:

NOW COMES SHAWN MICHAEL WALKER, Appellant, by and through

undersigned counsel, and submits this brief pursuant to the provisions of the Texas

Rules of Appellate Procedure.

**Statement of the Case**

On November 13, 2013, Shawn Michael Walker ("Walker") was charged by indictment with the first degree felony offense of possession of methamphetamine with an intent to distribute in an amount of four grams or more but less than 200 grams. CR 4.

On July 14, 2014, Walker entered a not guilty plea and proceeded to trial before a jury. 4 RR 1, 6-7. On July 15, 2014, the jury found him guilty of the charged offense and assessed his punishment at 55 years in prison and no fine. 5 RR 58-59; 6 RR 105-06; CR 36, 40. The trial court rendered judgment in accordance with the jury's verdict. 6 RR 106; CR 47-49.

The trial court signed Walker's certification of his right to appeal. CR 41. Walker timely filed his notice of appeal on July 28, 2014. CR 52. His trial counsel was allowed to withdraw and undersigned counsel was appointed to handle the appeal. CR 57-61, 64.

**Statement of Facts**

On October 27, 2013, at 5:11 p.m., Killeen police officers were called to 309 Root Avenue (an area noted for high drug activity) regarding a subject armed with a gun. 4 RR 18-21, 44-45, 66. They found a white van with a license plate number

2

that matched the one given by dispatch.  4 RR 21, 34; State Ex. 1.   Tiffany Diane Pierce ("Pierce") was is in the driver's seat.  4 RR 23.  Walker was seated in the front passenger seat.  4 RR 24; State Ex. 2.  Other occupants of the van were Joseph E. Copeland and Caroline R. Evans.  4 RR 27, 47.   The other facts necessary for this Court's consideration are set forth under the respective issues.

## Summary of the Argument

**First issue:**  The evidence proved only that Walker either possessed or constructively possessed methamphetamine in personal use amounts. Therefore, the evidence was insufficient to support his conviction for possession with intent to distribute.

**Second issue:**  Assuming Tiffany Pierce did possess methamphetamine in the alleged amount with an intent to distribute, nothing in the record establishes that Walker in any way assisted or encouraged her in her commission of the offense. Thus, the evidence was also insufficient to sustain Walker's conviction under a party theory.

## Argument and Authorities

## 1. The evidence was not sufficient to sustain Walker's possession with intent conviction as a principal.

*(a) Standard of review*

Sufficiency of the evidence under the federal due process standard is now reviewed under the legal sufficiency standard set forth in *Jackson v. Virginia,* 443 U.S. 307 (1979). *Brooks v. State,* 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). This standard is more rigorous than the previous Texas legal sufficiency review. *Id.* Under this standard, evidence is insufficient to support a conviction if, considering *all* the record evidence, both State and defense, in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *Jackson,* 443 U.S. at 319. Any inference made by the jury must be supported by sufficient evidence. *Thornton v. State,* 425 S.W.3d 289, 304 (Tex. Crim. App. 2014). Beyond a reasonable doubt means proof to a high degree of certainty. *Lane v. State,* 151 S.W.3d 188, 192 (Tex. Crim. App. 2004). Viewed in the light most favorable to the verdict, the evidence is insufficient when either (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense; or (2) the evidence conclusively establishes reasonable doubt. *Jackson,* 443 U.S. at 314, 319 n. 11, 320. This review focuses on the quality of the evidence presented. *Brooks,* 323 S.W.3d at 917-18

4

("Sufficient evidence is 'such evidence, in character, weight, or amount, as will legally justify the judicial or official action demanded.'") (Cochran, J., concurring).

*(b) Indictment*

Walker's indictment reads in relevant part as follows:

> Shawn Michael Walker, . . . Defendant, on or about the 27th day of October . . . 2013 . . . did then and there, individually and as a party with Tiffany Diane Pierce, intentionally and knowingly possess with intent to deliver a controlled substance, to-wit:  Methamphetamine, in an amount by aggregate weight, including adulterants and dilutants, of four grams or more but less than 200 grams.

CR 4.

*(c) Possession generally*

In cases involving unlawful possession of a controlled substance, the State must prove that the accused intentionally or knowingly exercised actual care, custody, control, or management over the substance and that the accused knew the matter possessed was contraband.  Tex. Health & Safety Code Ann. § 481.002 (38) (West 2010); *Poindexter v. State,* 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); *Martin v. State,* 753 S.W.2d 384, 387 (Tex. Crim. App. 1988).   The adverbs "intentionally and knowingly" apply to the conduct itself – not to the result of the

conduct or the circumstances surrounding the conduct. *Allen v. State,* 249 S.W.3d 680, 690 (Tex.App.—Austin 2013, no pet.). Possession need not be exclusive and evidence which shows that an accused jointly possessed the contraband with another is sufficient. *Id.* Whether the theory of prosecution is sole or joint possession, the evidence must link the accused to the contraband in such a manner and to such an extent that a reasonable inference may arise that the accused knew of the contraband's existence and that he had possession of it. *Id.* Additionally, to establish unlawful possession, the state move prove that the defendant knew that the object possessed was a controlled substance. *Powell v. State,* 502 S.W.2d 705, 708 (Tex. Crim. App. 1973); *Allen,* 249 S.W.3d at 690.

### (d) Possession is "location specific"

When the State puts on evidence of the presence of a controlled substance(s) in multiple locations, the circumstances present in each specific location must be analyzed separately. In *Moreno v. State,* 821 S.W.2d 344, 352 (Tex.App.-Waco 1991, pet. ref'd), the defendant argued the evidence was insufficient to affirmatively link him to the 745 grams of cocaine found under the hood of the vehicle. The defendant was a passenger in the vehicle, and upon his arrest and booking, peace officers recovered eleven grams of cocaine in the defendant's wallet. *Id.* However,

the Waco Court found the evidence insufficient to affirmatively link the defendant to the cocaine found under the vehicle's hood because the defendant: (1) was not connected with the ownership or control of the car; (2) made no furtive gestures; (3) did not attempt to escape; (4) made no incriminating statements; (5) was not under the influence of an illegal drug; and, (6) the odor of an illegal drug was not present in or around the vehicle. *Id.*; *see Brown v. State,* 911 S.W.2d 744, 748 (Tex. Crim. App. 1995) ("[E]ach defendant must . . . be affirmatively linked *with the drugs he allegedly possessed*[.]"); *United States v. Hernandez-Beltran,* 867 F.2d 224, 226-27 (5th Cir. 1989) (evidence sufficient to support two counts of possession with intent to distribute but not third count); *Paulman v. State,* No. 2-07-291-CR, 2008 WL 4531707, at *3 (Tex.App.—Fort Worth Oct. 9, 2008, pet. dism'd) (unpublished) (court engaged in analysis to determine whether appellant could be linked to all or part of methamphetamine found in house).

*(e) Constructive possession when others are present*

When an accused is not in exclusive possession of the place where the contraband is found, it cannot be concluded that the accused had knowledge of or control over the contraband unless there are additional independent facts and circumstances linking the accused to the knowing possession of the contraband.

*Poindexter,* 153 S.W.3d at 406. "[T]he legal issue is whether there was evidence of circumstances, in addition to mere presence, that would adequately justify the conclusion that the defendant knowingly possessed the substance." *Evans v. State*, 202 S.W.3d 158, 162 n. 9 (Tex. Crim. App. 2006). In *Evans* the Court of Criminal Appeals chose to no longer refer to "affirmative links" as if that term denotes some independent test of legal sufficiency: "Henceforth, we will use only 'link' so that it is clear that evidence of drug possession is judged by the same standard as all other evidence." *Id.* The Court did include in a footnote the following "non-exclusive list of possible 'affirmative links' that Texas courts have recognized as sufficient, either singly or in combination, to establish a person's possession of contraband":

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Evans*, 202 S.W.3d at 162 n. 12.[1]

However, "[m]ere presence in the vicinity of the contraband or where contraband is being used or possessed by others does not, by itself, support a finding that a person is a joint possessor or a party to the offense." *Allen,* 249 S.W.3d at 691; *Evans,* 202 S.W.3d at 162*; Harvey v. State,* 487 S.W.2d 75, 77 (Tex. Crim. App. 1972). In fact, mere presence does not make an accused a party to joint possession even if the accused knows of the existence of the contraband and has knowledge of an offense. *Oaks v. State,* 642 S.W.2d 174, 177 (Tex. Crim. App. 1982); *Allen,* 249 S.W.3d at 692; *Mares v. State,* 801 S.W.2d 121, 126 (Tex.App. – San Antonio 1990, no pet.) ("possession means more than being where the action is, it involves the exercise of dominion and control over the thing allegedly possessed").

*(f) Constructive possession in a vehicle when others are present*

In order to prove possession when multiple individuals are found in the same vehicle as contraband, there must be evidence of some nexus between the accused

---

[1] Other indicators of possession courts have found include: whether the accused's fingerprints were found on incriminating items associated with the controlled substance, *Oaks v. State,* 642 S.W.2d 174, 178 (Tex. Crim. App. 1982) (en banc); "Implausible story" link, *Santiestan-Pileta v. State,* 421 S.W.3d 9, 14 (Tex.App.—Waco 2013, pet. ref'd); Nervous, unsettled demeanor. *Jenkins v. State,* 76 S.W.3d 709, 713 (Tex.App.—Corpus Christi 2002, pet. ref'd); and whether the defendant was driving the car where the drugs were located, *Aldridge v. State,* 482 S.W.2d 171, 174 (Tex. Crim. App. 1972).

and the prohibited substance besides physical proximity. *United States v. Ferg,* 504 F.2d 914, 917 (5th Cir. 1974).[2]  In *Ferg,* the Fifth Circuit held the evidence of possession to be insufficient to sustain the conviction:

> The facts of this case illustrate the logic of this 'mere presence' rule. The government presents only two pieces of circumstantial evidence in an attempt to link Ferg with the seized marijuana. Ferg was traveling with Shaw, the person who admitted having purchased the marijuana, and Ferg was a passenger in the car in which the marijuana was concealed. Beyond the admission by Ferg that he was a traveling companion of one guilty of illegal possession of marijuana, the government failed to establish that Ferg in any way violated [the federal drug statute]. The government's evidence failed to prove that Ferg had ever maintained possession of the contraband or had any intention of participating in the distribution of it. . . . , his companion, in no way implicated Ferg in the statement he made to the federal agents. There was no evidence to show that Ferg and Shaw had traveled together for a sustained period of time after the marijuana was admittedly obtained by Shaw. Moreover, the government did not establish that Ferg had rented the car or even shared the cost of rental. It was not even shown or claimed that Ferg had ever driven the car or that he could drive an automobile. We do not accept the government's apparent invitation to infer guilt by association.

*Id.* at 917; *See Roberson v. State,* 80 S.W.3d 730, 741 (Tex.App.—Houston [1st Dist.] 2002, pet. ref'd) (no evidence beyond mere presence of three individuals in car together suggesting that they were working as a unit for any purpose); *United States v. Moreno-Hinojosa,* 804 F.2d 845, 847 (5th Cir. 1986) ("Even if [the

---

[2] Texas courts often look to federal case law (particularly the Fifth Circuit) for guidance regarding whether possession has been sufficiently proven.  See e.g. *Bethancourt-Rosales v. State,* 50 S.W.3d 650, 654 (Tex.App.—Waco 2001, pet. ref'd) ("The Fifth Circuit requires that evidence of control be supplemented by other circumstantial evidence 'that is suspicious in nature or demonstrates guilty knowledge.'").

passenger] knew that [the driver] was making an illegal marihuana run, this fact would not be sufficient evidence to establish his possession without an additional showing that he was riding in the truck to participate in the possession and distribution. The government did not make this additional showing even circumstantially beyond a reasonable doubt"); *United States v. Gordon,* 700 F.2d 215, 217 (5th Cir. 1983) ("We are unable to find any evidence, beyond McMahon's 'mere presence' in the truck, to indicate that he had maintained control over the contraband, had any intention of participating in the distribution of the contraband, or had any knowledge of it whatsoever. To affirm defendant's conviction would be to countenance a conviction based on guilt by association."); *United States v. Zule,* 581 F.2d 1218, 1221 (5th Cir. 1978) (constructive possession not shown where there was no evidence that defendant owned or had control of sports car from which another person removed contraband or that defendant handled the contraband at any time); *United States v. Littrell,* 574 F.2d 828, 835 (5th Cir. 1978) (constructive possession not shown where there was no evidence that defendant owned the car or was aware of cocaine presence in glove compartment or that he ever handled the cocaine at any time); *United States v. Moreno-Hinojosa,* 804 F.2d 845, 847 (5th Cir. 1986) (Even if defendant passenger knew that driver was making an illegal marihuana run, this fact would not be sufficient evidence to establish his possession without an additional showing that he was riding in the truck to participate in the

possession and distribution.); *United States v. Ramos,* 476 F.2d 624, 625 (9th Cir. 1973) (It is "well established that a passenger may not be convicted [of possession] unless there is evidence connecting him with the contraband, other than his presence in the vehicle."); *United States v. Stanley,* 24 F.3d 1314, 1320-21 (11th Cir. 1994) (possession with intent to distribute conviction reversed because of lack of evidence that defendant passenger in vehicle had any knowledge of crack cocaine hidden under the dashboard); *Cf. Blackman v. State,* 350 S.W.3d 588, 595 (Tex. Crim. App. 2011) (front seat passenger defendant had traveled hundreds of miles with two other men, after which time the driver was given a box, later found behind driver's seat of van and which contained three kilograms of cocaine); *Bethancourt-Rosales v. State,* 50 S.W.3d 650, 654 (Tex.App.—Waco 2001, pet. ref'd) (defendant had been in possession of vehicle for five days wherein 9.83 kilograms of cocaine was found in a hidden compartment welded to the undercarriage of the vehicle).

*(g) Intent to distribute*

An intent to distribute is usually proven through circumstantial evidence. "As a general rule, intent to distribute can be inferred from the possession of a large amount of controlled substance." *Bethancourt-Rosales v. State*, 50 S.W.3d 650, 653 (Tex. App.—Waco 2001, pet. ref'd) (citing *United States v. Meneses–Davila,* 580

F.2d 888, 897 (5th Cir.1978)).[3]  Again however, an intent to distribute based on the presence of a large quantity of drugs cannot be inferred absent a showing of knowing possession by the accused.  In *United States v. Smith,* 20 Fed. Appx. 258 (6th Cir. 2001) (unpublished), wherein appellant was convicted of possession with intent to distribute (and aiding and abetting) methamphetamine, amphetamine and cocaine, the relevant facts were as follows.  Appellant was a passenger in a rented vehicle on which a traffic stop was effected.  He appeared to be "stoned" and "had a white mucus substance around his lips" the vehicle had trash strewn about and there was a smell of body odor "as if the men had not bathed in a couple of days."  *Id.* at 261. The vehicle appeared to have been rented by the driver's wife. *Id.*  After a drug dog alerted to a black canvas bag behind the driver's seat, a search showed it to contain large quantities of illegal drugs. *Id.* at 261-62.  A further search revealed a loaded pistol "next to the passenger seat between the seat and the console," a loaded magazine in the glove compartment, hotel and food receipts from the previous two days, a set of digital scales and wrapping material used to wrap the drugs. *Id.* at 262.

---

[3] Other factors from which an intent to distribute can be inferred include:  The presence of large amounts of cash or the fact that the controlled substance is individually wrapped in small packages can be evidence of an intent to distribute, *Herrera v. State*, No. 07-09-0071-CR, 2009 WL 2618301, at *3-4 (Tex. App.—Amarillo Aug. 26, 2009, no pet.); the presence of a firearm. *De La Garza v. State,* 898 S.W.2d 376, 379 (Tex.App. – San Antonio 1995, no pet.); *United States v. Campos,* 306 F.3d 577, 580 (8th Cir. 2002) ("A gun is generally considered a tool of the trade for drug dealers."); and the presence of scales. *Owen v. State,* No. 05-91-00127-CR, 1992 WL 166598, at *4 (Tex. App.—Dallas July 15, 1992, pet. ref'd) (unpublished).

Last but not least, a "shooter pipe used to ingest narcotics" was found in appellant's front pants pocket. *Id.* The Sixth Circuit held that the evidence was insufficient to support the possession with intent to distribute charges:

> The government presented no direct evidence of actual possession by Smith. In fact, there is no direct evidence that he knew of the drugs or exercised control over the drugs or the vehicle, or that he was anything but a passenger in the vehicle. Thus, the issue before us is whether the government presented sufficient circumstantial evidence to establish that Smith constructively possessed the methamphetamine and the amphetamine with the intent to distribute the drugs. . . . With respect to these counts, the evidence presented at trial established that 5854.4 grams of amphetamine and 436.9 grams of methamphetamine were discovered in a bag located on the floor behind the driver's seat. DEA Agent Ramsey testified that these quantities were consistent with drug distribution. Thus, the jury was entitled to infer an intent to distribute from these quantities. While the evidence may have been sufficient to establish constructive possession, if not actual possession, of these drugs by the possessor and driver of the vehicle, the problem with the convictions of Smith, a passenger, is the lack of evidence showing any possession of these drugs by him. The government presented no evidence that Smith exercised any control over or had access to these drugs. The drugs were found in a bag, covered by a shirt, on the floor behind the driver's seat. Additionally, the government presented no evidence that Smith exercised any type of control over the vehicle or the bag in which the drugs were located. The government's only evidence was that Smith was a passenger in a vehicle which contained drugs likely intended for distribution. . . . The government also failed to present any evidence to support Smith's conviction on an aiding and abetting theory. Even if Smith was aware of the drugs or the driver's involvement in illegal activity, that awareness would be insufficient to convict him of aiding and abetting possession of drugs with intent to distribute.

*Id.* at 266-67.

*(h) What constitutes a rational, reasonable inference?*

An appellate court's duty in addressing a sufficiency of the evidence complaint under the *Jackson* standard is to ensure the rationality of the factfinder. *Urbano v. State,* 837 S.W.2d 114, 116 (Tex. Crim. App. 1992); *Adames v. State,* 353 S.W.3d 854, 860 (Tex. Crim. App. 2011) ("On review, this Court determines whether the necessary inferences made by the trier of fact are reasonable, based upon the cumulative force of all of the evidence."). Circumstantial evidence is "direct proof of a secondary fact which, by logical inference, demonstrates the ultimate fact to be proven." *Taylor v. State,* 684 S.W.2d 682, 684 (Tex. Crim. App. 1984). "In the law of evidence, an inference . . . is a logical consequence flowing from a proven fact." *Brewer v. State,* 126 S.W.3d 295, 297 Tex.App.—Beaumont 2004, pet. ref'd). "Logic" is "the apparently unavoidable cause and effect relationship of events leading to a particular conclusion." New Webster's Dictionary of the English Language 562 (1971). "Logical relevancy" is defined thusly:

> Existence of such a relationship in logic between the fact of which evidence is offered and a fact in issue that the existence of the former renders probable or improbable the existence of the latter.

Black's Law Dictionary 942 (6th ed. 1990).

In *Urbano* the appellant argued that his capital murder conviction for

committing murder for remuneration or the promise of remuneration was not supported by sufficient evidence. *Urbano,* 837 S.W.2d at 115. The Court of Criminal Appeals agreed:

> [T]he evidence and reasonable inferences therefrom established that at the time of the offense appellant was a member of a prison gang; that the gang had definite rules regarding murder, promotion in rank, and the consequences of promotion in rank; i.e., increased access to money, drugs, and goods; that appellant murdered on behalf of the gang; and that after the murder he rose in rank. There was no direct evidence, however, that at the time of the killing, appellant was aware of the gang rules in question and that he acted with those rules in mind. Nor was there circumstantial evidence from which the jurors could conclude beyond a reasonable doubt that appellant must have known of the relevant gang rules and committed the murder to receive a benefit from the operation of the rules. *Certainly, the evidence raises a strong suspicion that appellant acted with the gang rules in mind, that is, that he murdered with an expectation of tangible benefit. But appellant's intent or state of mind with respect to an expectation of benefit was not proven to a high degree of certainty. Rational jurors could not conclude beyond a reasonable doubt simply from appellant's membership in the gang that he was aware of all the gang's rules.* (emphasis added)

*Id.* at 116-17.

In *Hooper v. State,* 214 S.W.3d 9 (Tex. Crim. App. 2007), wherein appellant was convicted of aggravated assault of a public servant, the Court of Criminal Appeals addressed, *inter alia,* what is and what is not a reasonable inference. *Id.* at 15-17. The following language is instructive:

> Under the *Jackson* [*v. Virginia*] test, . . . juries are permitted to draw multiple reasonable inferences from the evidence (direct or circumstantial), but *they are not permitted to draw conclusions based on speculation.* Without concrete examples, it can be difficult to

16

differentiate between inferences and speculation, and between drawing multiple reasonable inferences versus drawing a series of factually unsupported speculations. This hypothetical might help clarify the difference. A woman is seen standing in an office holding a smoking gun. There is a body with a gunshot wound on the floor near her. Based on these two facts, it is reasonable to infer that the woman shot the gun (she is holding the gun, and it is still smoking). Is it also reasonable to infer that she shot the person on the floor? To make that determination, other factors must be taken into consideration. If she is the only person in the room with a smoking gun, then it is reasonable to infer that she shot the person on the floor. But, if there are other people with smoking guns in the room, absent other evidence of her guilt, it is not reasonable to infer that she was the shooter. No rational juror should find beyond a reasonable doubt that she was the shooter, rather than any of the other people with smoking guns. To do so would require impermissible speculation. But, what if there is also evidence that the other guns in the room are toy guns and cannot shoot bullets? Then, it would be reasonable to infer that no one with a toy gun was the shooter. It would also be reasonable to infer that the woman holding the smoking gun was the shooter. This would require multiple inferences based upon the same set of facts, but they are reasonable inferences when looking at the evidence. We first have to infer that she shot the gun. This is a reasonable inference because she is holding the gun, and it is still smoking. Next, we have to infer that she shot the person on the floor. This inference is based in part on the original inference that she shot the gun, but is also a reasonable inference drawn from the circumstances.

*Id.* at 15-16.

*(j) Analysis*

*(i) driver's side baggie*

The first article containing methamphetamine was a small Ziploc baggie box "right next to the driver's side on the floor board," "on the front driver's door,"

17

between the seat and the door, "right inside the door jamb." 4 RR 28, 66-67, 72-73; State Ex. 3, 18. This article was in plain view to the officer who found it because he approached the vehicle from the driver's side door. 4 RR 66. It would not have been in plain view to someone seated in the front passenger seat. The net weight of this methamphetamine was 2.16 grams. State Ex. 23; 4 RR 88, 101. The State's expert witness, Detective Mallow, testified that this was a user amount, not a distribution amount. 4 RR 95-96.

### (ii) Walker's pocket baggie

A search of Walker's person at the Killeen City Jail revealed a small baggie of methamphetamine in Walker's front left change pocket. 4 RR 34, 99; State Ex. 17. The net weight of this methamphetamine was 0.28 grams. 4 RR 87, 99; State Ex. 23. Detective Mallow, testified that this was a user amount, not a distribution amount. 4 RR 95-96.

### (iii) Pierce's vaginal methamphetamine

A strip search of Pierce at the jail yielded up two pair of tweezers and also revealed a string hanging out of her vaginal area. 4 RR 53-54. When Pierce refused to pull out the string, she was taken to a hospital to have it removed; upon arrival at the hospital, "there was a brown bag sitting next to her and several baggies of crystal-like substance that she had pulled out of her vaginal area." 4 RR 55-56. There was

no evidence at trial as the net weight of the substance in these baggies but nothing in the record suggests that Walker was aware that Pierce was carrying methamphetamine in her vagina.

*(iv) bag behind the driver's seat*

It should first be noted that the entire area from behind the front seats to the rear of the van, was simply "full of stuff"; State Ex. 4, 7:

State:  How was this van?  Was it neat and clean, relatively empty?

Officer Lawson:  No.  It was completely full of stuff.  Clothes, trash, a lot of stuff.
4 RR 49.

Officer Van Valkenburg:  [T]here was a lot of stuff in the vehicle.  Appeared like somebody might have been living in the vehicle."
4 RR 68.

Officer Van Valkenburg "[T]here was a lot . . . of luggage in there."
4 RR 71.

Although the bag behind the driver's seat was only found a few feet from the front passenger seat, it was hidden under clothes inside a box:

Officer Lawson:  . . . After that I found a blue bag and *inside the bag was a black box, inside the black box was a large gallon size Ziploc bag* with a white crystal-like substance and razor inside.

State:  And where was this blue bag inside the van?

Officer Lawson:  It was directly behind the passenger seat of the vehicle.

19

State:  So it was in the second seat behind the front passenger and driver seat directly behind the passenger seat?

Officer Lawson:  Yes.

4 RR 49, 57-58; State Ex. 4.  This Ziploc bag contained 40.58 grams of methamphetamine and a razor.  4 RR 59, 88; State Ex. 5, 6, 20, 23 (gallon Ziploc bag with crystal-like substance in it; razor inside 4 RR 59).  When Officer Lawson was asked "What else was in that blue bag?" she responded, "[i]t was female clothing."  4 RR 58-59.

*(v) Frisbee methamphetamine*

In the rear area of the van, inside a laundry bag, methamphetamine was found in a red Frisbee, wrapped in a pair of women's pants:

State:  And then tell us about the rest of your search of the van.  What other things did you find?

Officer Lawson:  Once I got to the rear of the vehicle and the trunk area where the back door as you saw in the picture, . . . there were several bags of laundry in it. So I started going through the laundry, and in one of the bags I found wrapped in a pair of pants another large quantity of crystal-like substance.

4 RR 51-52, 103.

State:  And what are we looking at in State's Exhibit Number 12?

Officer Lawson:  That is out of the bag in the rear compartment.  This is the second bag of crystal-like substance with the red Frisbee inside it.

4 RR 59-60; State Ex. 12, 13.

State:  What other items were found in the bag that had the red Frisbee and the crystal methamphetamine?

Officer Lawson:  There was female clothing, size small through large shirts, a pair of tan size three, . . . this was found inside the female jeans, size three, wrapped up in a baggie.

State:  And State Exhibit 14, what are we looking at there?

Officer Lawson:  That's the same thing just closer up.

State:  That same red Frisbee with the crystal substance you believe to be methamphetamine?

Officer Lawson:  Yes.

4 RR 60; State Ex. 14.  This methamphetamine weighed 56.92 grams.  4 RR 88, 103; State Ex. 18, 23.

*(vi) pink methamphetamine*

A second bag containing pink methamphetamine was found directly behind the driver's seat, 4 RR 73; State Ex. 7, 8, 9:

Officer Van Valkenburg:

"[W]hen I finished searching around the driver side door and the seat, . . . I . . . got in the back of the van, and I began searching that area, I found another bag of crystal methamphetamine.  This one was the pink bag, and that was also a fairly small Ziploc bag which was directly behind the [driver's] seat."

4 RR 69-70.  The bag and the substance inside were both pink in color.  4 RR 70. This methamphetamine weighed 5.64 grams.    4 RR 88, 101-102, State Ex. 19, 23. In a post-arrest interview, Walker indicated he was aware of this bag, adamantly maintaining that it was not methamphetamine:  "I know that's not real."  State Ex. 24, 4:10:50.

*(vii) syringes*

In the rear of the van, inside a women's cosmetic bag unused syringes were found. 4 RR 61; State Ex. 16. Officer Lawson: "There was a multicolored . . . bag that you put make and stuff in, and it had a whole bunch of syringes in it." 4 RR 52. Used syringes were also found in the rear of the van:

> Officer Van Valkenburg: In the back seat, the very first seat, there was a bunch of syringes on the left side of the floor, on the right side of the floor, some of them still had liquid inside of them, which I assume was methamphetamine. And some of them were empty, had the caps off, and you could see that they had been used or because there was blood on the needle and also inside of them.

4 RR 71.

*(viii) MSM*

A search of the rear area of the van also turned up an "MSM container." 4 RR 60-61; State Ex. 15. The Killeen detective in charge of the case testified that MSM is a horse supplement (not a dangerous drug) commonly used to mix with methamphetamine to increase the weight of the substance. 4 RR 97, 108.

*(ix) legitimate inferences*

When officers arrived, Pierce was seated in the driver's seat. 4 RR 23. Walker was seated in the front passenger seat. 4 RR 24; State Ex. 2. Walker said the van belonged to his girlfriend. 4 RR 25-26. Pierce was not his girlfriend. 4 RR 26. The

22

evidence suggested that someone had been living out of the van and that someone was a woman – no men's clothing was found in the van. It can be legitimately inferred that Walker was not living out of the van. It can be arguably inferred that Pierce *was* living out of the van. Thus it can also be legitimately inferred that Pierce possessed the large quantities of methamphetamine found in "bag behind the driver's seat" and the "Frisbee methamphetamine" – not Walker. *See United States v. Crain,* 33 F.3d 480, 486 (5th Cir. 1994) ("We are especially reluctant to infer constructive possession of contraband by one occupant when there is evidence in the record explicitly linking the contraband to another occupant.").

Killeen police officers were dispatched to 309 Root at 5:11 p.m. based on an anonymous phone call. 4 RR 18, 39, 44-45. The first officer to respond probably arrived on scene within five minutes of the call. 4 RR 51. How long had the four individuals been in the van together at the time officers arrived? Probably not very long. Walker stated at the time of the arrest regarding the individuals in the back of the van "that he had just picked them up to give them a ride," and "[t]hey hadn't been in the van very long." 5 RR 15. It can be legitimately inferred that Pierce and Walker were in the van before the other individuals. But nothing in the record provides a legitimate basis to infer that Walker had been in the van long enough to know everything it contained. Furthermore, nothing in the record provides a legitimate basis that he had been anywhere in the van except the front passenger seat.

23

The State, based on the weight of the "bag behind the driver's seat" (40.58 grams) and the "Frisbee methamphetamine" (56.92 grams), conceded that Pierce possessed with the intent to distribute, but asked the jury to infer that this also proved Walker's intent to distribute:

> You have 100 grams of methamphetamine and a van that goes back to a friend of his, . . . did Mr. Walker, along with the driver of this vehicle, possess more than 4 grams with the intent to distribute it? I think the answer is clear.

5 RR 41.

> [Y]ou have 105.5 grams of methamphetamine in a van owned by this defendant's wife that he's sitting in the front passenger's seat.

5 RR 53. But this was not a legitimate inference because this methamphetamine was in bags and out of sight from the front passenger seat.

The State asked the jury to infer that Walker knew about the "100 grams of methamphetamine" in the van because he had 0.28 grams in his pocket:

> You should not have any doubt that there was more than 100 grams of methamphetamine in that van. And for sure, there's no doubt he had at least a gram on him because he had it at the jail. The only evidence you have before you, that much narcotics, *someone* is selling it. *Someone* is distributing it.

5 RR 40. But as noted above in subsection *(d)*, each location where a controlled substance is found must be analyzed individually. It was not legitimate to infer that because Walker possessed 0.28 grams in his pocket, he therefore possessed the methamphetamine in "bag behind the driver's seat" and the "Frisbee

24

methamphetamine." *See Allen,* 249 S.W.3d at 701 (possession of "roach" carried little weight or probative value in determining whether appellant had custody and control of cocaine found in kitchen cabinets and on top of refrigerator).

The State asked the jury to infer Walker's intent to distribute based on the presence of syringes: "You have syringes. Is that just possession . . . of less than a gram?" 5 RR 41. Nothing in the record provides a legitimate basis to infer that Walker could see the syringes from where he was seated or that he even knew they were in the van (the same can be said for the MSM).

The State asked the jury to infer Walker's intent to distribute based on an assumption that the two individuals in the back of the van were "getting high":

> They pick up two people and the two people are getting high in the back of the van. And who do you think is providing them with what they need to get high? That's distribution. That's selling it.

5 RR 54. Given that the "hot to the touch" pipe was found in the rear of the van, it may have been a legitimate inference that one or both of these folks was smoking methamphetamine. But it is not legitimate to infer that this methamphetamine was provided by Walker (or Pierce for that matter). None of the bags of methamphetamine found in the van were open. It is just as possible that one of the individuals brought his (or her) own methamphetamine. *See Allen,* 249 S.W.3d at 703 ("A jury may not reasonably infer an ultimate fact from meager circumstantial evidence, none more probable than another."). And there was no evidence that

anybody in the van had been using the syringes to inject methamphetamine at the time. 5 RR 21.

The State asked the jury to infer Walker's intent to distribute based on his statement that the pink methamphetamine was not actually methamphetamine:

> "I know the pink stuff is not dope." . . . How would he know that? How would he know the pink stuff is not dope? We'll get back to that in a minute. . . . Now, back to my original question. . . . How do you know that? Unless you've touched it, taken it, weighed it, checked it, analyzed it, how would know that unless you were involved with it.

5 RR 38, 40. It was a legitimate inference that Walker was aware of the pink substance that ultimately tested positive for methamphetamine. But as noted above in subsection *(c)*, to establish unlawful possession, the state must prove that the defendant knew that the object possessed was a controlled substance. Walker's statement was actually evidence that he did not know the pink substance was a controlled substance. And just as important is the fact that the net weight of the pink substance was 5.64 grams. 4 RR 88, State Ex. 23. The State's expert testified that this could have been a user quantity:

> State: When you say a large amount, what is it that's a large amount as opposed to a small amount?
>
> Detective Mallow: A small amount was initially what was found. A small amount, showed me the bag, a larger amount, anything over four, *ten grams*, you know, more than user quantities.

4 RR 95-96. Thus, based on the weight alone, this evidence did not provide a legitimate basis to infer an intent to distribute. *See United States v. Meshack*, 225

F.3d 556, 569 (5th Cir. 2000) ("We agree that the amount of cocaine involved could be consistent with personal use and, accordingly, is insufficient in and of itself to prove an intent to distribute."), *amended on reh'g in part,* 244 F.3d 367 (5th Cir. 2001).

It should also be noted that no firearm was found inside the van or on any of the occupants. 4 RR 38-39, 48-49, 69. No scales were found. And no currency was found in the van or on any of the occupants. 5 RR 21. The State tried to explain the absence of cash thusly:

> Mr. Parker brought up a point that there was no money in the van. That's true. There was no money. . . . *Well, what if they re-upped*? They just got hold of some and they're looking to sell it and distribute it. They didn't have money on them because they used it to buy the dope that's in the van. And they're parked at 309 Root Street, mobile drug van, people come in, get in the back, get high.

5 RR 55. The State's theory was utter speculation. "Evidence in a knowing possession of contraband case must amount to more than mere conjecture." *Allen,* 249 S.W.3d at 704. "Proof that amounts to only a strong suspicion or mere probability of guilty is insufficient to sustain a conviction." *Id.*; *United States v. Coppin,* 1 Fed. Appx. 283, 289 (6th Cir. 2001) (unpublished). (Conjecture and surmise regarding what a defendant may have intended or known is insufficient to support a conviction.).

In sum, there is no evidence that Walker constructively possessed the methamphetamine that Pierce was secreting in her vagina. *See United States v. Jones,* 518 F.2d 64, 68 (9th Cir. 1975) (evidence insufficient as a matter of law to establish beyond a reasonable doubt that defendant had knowledge of or control over heroin in vagina of companion); *United States v. Cooper,* No. 8:13-cr-187, 2013 WL 5741786, at *3 (M.D. Fla. Oct. 22, 2013) (unpublished) ("vagina smuggling" constituted *actual* possession). It could not be legitimately inferred that he was aware of the 2.16 grams of methamphetamine found between the driver's seat and the driver's side door – he couldn't have seen it. The same can be said for the "bag behind the driver's seat", the "Frisbee methamphetamine", the syringes and the MSM. The methamphetamine in Walker's pocket and the pink methamphetamine were only user quantities. Therefore, the evidence was insufficient to sustain Walker's conviction as a principal.

## 2. The evidence was not sufficient to sustain Walker's possession with intent conviction under a party theory.

*(a) Evidentiary requirements for conviction as a party*

The Penal Code lists four ways that a person can be criminally responsible for the conduct of another. Tex. Penal Code Ann. § 7.02 (West 2011). The trial court's jury instructions in the instant case only mentioned one:

> A person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.

CR 31; Tex. Penal Code Ann. § 7.02 (a)(2) (West 2011). A jury is not authorized to convict a defendant as a party under a theory not set forth in the jury charge. *Wooden v. State,* 101 S.W.3d 542, 548-49 (Tex.App. – Fort Worth 2003, no pet,). To establish party liability, it must be proven that the accused harbored the specific intent to promote or assist the commission of the charged offense. *See Pesina v. State,* 949 S.W.2d 374, 382 (Tex.App.—San Antonio 1997, no pet.). The evidence must show that, at the time of the offense, the parties were acting together, each contributing to their common purpose. *Burdine v. State,* 719 S.W.2d 309, 315 (Tex. Crim. App. 1986) (en banc). Intent may be inferred from acts, words, and conduct of the accused. *Hernandez v. State,* 819 S.W.2d 806, 810 (Tex. Crim. App. 1991).

In determining whether a defendant participated as a party in the commission of an offense, the jury may look to events that occurred before, during, or after the offense. *Ransom v. State,* 920 S.W.2d 288, 302 (Tex. Crim. App. 1996) (op. on reh'g).

### (b) Aiding and abetting under federal law

Criminal liability as a party to an offense under Texas law is synonymous with criminal liability as an aider and abettor under federal law. *Marable v. State,* 85 S.W.3d 287, 292 & n. 15 (Tex. Crim. App. 2002). Therefore federal aiding and abetting cases can instructive regarding party liability as it relates to possession with intent to distribute. A defendant may be convicted of aiding and abetting if he associates with criminal activity, participates in it, and helps it succeed. *United States v. Delagarza-Villarreal,* 141 F.3d 113, 140 (5th Cir. 1997). "[T]o aid and abet, a defendant must share in the intent to commit the offense as well as play an active role in its commission. . . . [H]e must have aided and abetted each material element of the offense." *United States v. Lombardi,* 138 F.3d 559, 561 (5th Cir. 1998). A conviction for aiding and abetting possession with intent to distribute requires proof that the defendant aided and abetted in both the possession and distribution of the drug. *United States v. Natel,* 812 F.2d 937, 941 (5th Cir. 1987); *see United States v. Delagarza-Villarreal,* 141 F.3d 113, 140 (5th Cir. 1997)

(evidence supported finding that defendant aided and abetted intention to distribute but not possession); *United States v. Morrison,* 220 Fed. Appx. 389, 395 (6th Cir. 2007) (unpublished) (While defendant's comments established he knew something illegal was involved with vehicle, they did not establish his knowledge of hidden drugs).

### *(c) Pierce as a principal*

For a defendant to be guilty as a party, there must first be evidence of the guilt of another person as the primary actor. *Richardson v. State,* 879 S.W.2d 874, 882 (Tex. Crim. App.1992). The indictment alleges Pierce as the primary actor. CR 4. As noted above (subsection 1*(j)(ix)*), it could legitimately be inferred that Pierce possessed the large quantity "bag behind the driver's seat", the large quantity "Frisbee methamphetamine." Obviously it can be inferred that she possessed the methamphetamine found in her vagina. Assuming *arguendo* that this was sufficient to establish that Pierce possessed this methamphetamine with an intent to distribute it, what is there that suggests that Walker assisted in this possession or intent?

### *(d) Walker's conduct before the arrest*

There is nothing in the record that establishes Walker's conduct vis-à-vis

Pierce prior to the arrest other than they were together in a van. Nothing in the record establishes that Walker had a possessory interest in the van sufficient to infer that he had provided it to Pierce. *Cf. Adams v. State,* No. 05-92-02268-CR, 1994 WL 370117, at *2 (Tex.App.—Dallas July 14, 1994, no pet.) (unpublished) (fact that car in which cocaine was delivered was registered in appellant's name was evidence of party liability). Nothing in the record suggests that he had anything to do with placing the large quantities of methamphetamine in the van or that he ever drove the van. *Cf. United States v. Savinoch,* 845 F.2d 834, 838 (9th Cir. 1988) (rational jury could find that defendant aided and abetted her husband's criminal venture by accompanying him on the transaction, and sought to make it succeed by driving the car and carrying the cocaine to the drop site).

### (e) Walker's conduct at the time of the arrest

Nothing that Walker said or did at the time of his arrest potentially implicated him in Pierce's possession of the large quantities of methamphetamine other than the fact that it was present in the van. But that is not enough. *See United States v. Morrison,* 220 Fed. Appx. 389, 396-98 (6th Cir. 2007) (unpublished) (no inference of aiding and abetting intent to distribute based on existence of large quantity of drugs absent a showing that the defendant had knowledge of the drugs). In *United*

32

*States v. Longoria,* 569 F.2d 422 (5th Cir. 1978), wherein appellant was convicted of possession with intent to distribute marijuana, the facts were as follows. Appellant caught a ride with Delgado, the owner of the vehicle, from Edinburg, Texas to Austin, Texas, Delgado stating he "had business in Austin." *Id.* at 424. Shortly before reaching a border checkpoint, Delgado informed appellant that there was marijuana in the car, handed her $300 and told her to "keep calm." At the border check point, one of the agents smelled marijuana, and after obtaining Delgado's consent to search the vehicle, found 176 pounds of marijuana inside suitcases located in the trunk. An additional search "revealed trace of marijuana in appellant's pocket book; however, there is no contention that these traces were in any way related to the marijuana found in the trunk." *Id.* The Fifth Circuit reversed the conviction:

> [T]here is insufficient evidence to show that appellant shared Delgado's intent to distribute the marijuana, and that there is almost no evidence to establish affirmative conduct designed to aid the distribution. Her acceptance of the $300, and her silence at the checkpoint perhaps establish her desire that the unknown quantity of marijuana escape detection, and that she and Delgado arrive safely in Austin. That evidence does not, however, establish in any way her intention to associate herself with and participate in the distribution of marijuana.

*Id.* at 425.

### (f) Walker's conduct after the arrest

Killeen Detective Mallow interviewed Walker at some point after the arrest. State Ex. 24. Walker's responses to the questions put to him are for the most part incomprehensible or he doesn't respond. He made no mention of any conversations he had with Pierce. *See United States v. Sliwo,* 620 F.3d 630, 633, 638 (6th Cir. 2010) (Government failed to prove aiding and abetting possession with intent to distribute marijuana, in part because "[t]he government failed to provide any evidence of conversations between Defendant and his alleged co-conspirators.").

*(g) Summary*

Nothing Walker said or did prior to the arrest, during the arrest, or after the arrest established that he was acting to assist Pierce in any possession with intent to distribute. He was simply present. But mere presence at the scene of an offense or even knowledge that an offense is being committed does not make one a party to an offense. *Ahrens v. State,* 43 S.W.3d 630, 634 (Tex.App.—Houston [1st Dist.] 2001, pet. ref'd). The evidence was insufficient to sustain Walker's conviction under a party theory.

## Prayer for Relief

If the evidence is insufficient to sustain the charged offense but is sufficient to support a lesser-included offense, the judgment should be reformed to reflect the

lesser-included conviction. *Thornton v. State,* 425 S.W.3d 289, 307 (Tex. Crim. App. 2014). The parties agreed that the evidence was sufficient to support a jury instruction on the lesser included offense for possession of methamphetamine under one gram based on the 0.28 grams found in Walker's pocket. 5 RR 24-26; CR 36. Because the evidence was insufficient to support Walker's conviction for the charged offense, he requests that this Court vacate his sentence, and remand the cause back to the trial court to modify the judgment to reflect a conviction for the lesser included offense of simple possession, and for re-sentencing.

Respectfully submitted,
/s/ John A. Kuchera
John A. Kuchera
210 N. 6th St.
Waco, Texas 76701
(254) 754-3075
(254) 756-2193 (facsimile)
SBN 00792137
johnkuchera@210law.com
Attorney for Appellant

## Certificate of Service

This is to certify that a true and correct copy of the above and foregoing Appellant's Brief has this day been mailed to the office of Mr. Bob D. Odom, Assistant District Attorney, P.O. Box 540, Belton, Texas 76513.

SIGNED this 12th day of January, 2015.

/s/ John A. Kuchera
John A. Kuchera,
Attorney for Shawn Michael Walker

## Certificate of Compliance with Rule 9.4

1.  This brief complies with the type-volume limitation of Tex. R. App. P.  9.4(i) because the brief contains 8,151 words, excluding the parts of the brief exempted by Tex. R. App. P.  9.4(i)(1).


2. This brief complies with the typeface requirements of Tex. R. App. P.  9.4(e) and the type style requirements of Tex. R. App. P.  9.4(e) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in Times New Roman, size 14 font.



/s/ John A. Kuchera
John A. Kuchera,
Attorney for Shawn Michael Walker


Dated:  January 12, 2015